PAUL MUELLER COMPANY,
Appellant,

v.

ALCON LABORATORIES,
INC., Appellee.

No. 2–97–374–CV.

Court of Appeals of Texas,
Fort Worth.

May 27, 1999.

Wolin, Ridley & Miller, L.L.P., Paul E. Ridley, Frederick Linton Medlin, Dallas, for appellant.

Kelly, Hart & Hallman, P.C., Donald E. Herrmann, P.C., Fort Worth, for appellee.

Panel F: LIVINGSTON, RICHARDS, and BRIGHAM, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### Introduction

Alcon Laboratories, Inc. sued Paul Mueller Company for breach of contract and breach of express and implied warranties. The jury unanimously found for Alcon on all issues submitted by the trial court, and the trial court entered judgment on the verdict. Mueller raises six points on appeal challenging the jury charge. We affirm.

### Background

Alcon produces eye care products, including saline and contact lens solutions. Mueller fabricates and sells stainless steel tanks to the pharmaceutical industry. This lawsuit arises from Alcon's purchase

of such tanks fabricated and sold by Mueller.

In 1990, Alcon decided to upgrade the capacity of two production lines due to growing product demand. Alcon wanted to replace four 3,500 gallon stainless steel tanks with 5,000 gallon stainless steel tanks. The tanks would be used to manufacture various saline-based solutions and Alcon would need to construct the required "clean room" environment facilities around the tanks.

On October 26, 1990, Alcon's purchasing department sent a "Request for Proposal" to three tank manufacturers, including Mueller. Mueller responded with a written quotation dated November 15, 1990. Mueller sent three revised written quotations in response to Alcon's requested changes. The revised quotations were dated December 17, 1990, February 7, 1991, and February 19, 1991. There was disclaimer of warranty language in fine print on the back of all four of the Mueller quotations.

Alcon and Mueller representatives met in late January 1991 to discuss the project. After the meeting, Mueller sent letters dated January 22 and 23, 1991 confirming an oral price adjustment agreed to during the meeting. Mueller issued its sales order on January 31, 1991.

Alcon issued its purchase order on April 5, 1991. The purchase order stated that "[s]eller's commencement of work on the goods subject to this purchase order . . . shall be deemed an effective mode of acceptance of this purchase order." It contained warranties which differed from those on the Mueller quotations.

The tanks showed signs of rust after they were delivered by Mueller but before they were installed by Alcon. Mueller sent a field service person to make repairs. Alcon then installed the tanks and constructed a "clean room" environment facility around them. While the tanks were still in the Federal Drug Administration validation process, they showed signs of unusual rust and corrosion. Mueller ultimately disclaimed "any and all liability for corrosion" in the tanks and stated that it had "no responsibility to participate in any way in the repair of" the tanks. Alcon then hired a third party to grind and resurface the interior of the tanks. Alcon eventually had to replace two of the tanks and was required to literally take its building apart and reconstruct it around the new tanks. Alcon filed this lawsuit to recover those costs.

The parties disagree about what comprises their contract. Alcon asserts that it is the Alcon purchase order issued April 5, 1991. Mueller asserts that the contract consists of Mueller's December 17, 1990 quotation, as modified by its letters of January 22 and 23, 1991, and an oral price adjustment.

### *The Jury Charge*

 All six of Mueller's points challenge the jury charge. The standard of review for alleged jury charge error is abuse of discretion. *See Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). The trial court has broad discretion in submitting the jury charge and it abuses that discretion only when it acts without reference to any guiding principles. *See id.*

 Mueller's first point asserts that the trial court erred in failing to submit Mueller's contract formation questions to the jury. The trial court submitted Alcon's proposed question: "Do you find from a preponderance of the evidence that Mueller accepted Alcon's purchase order?" It refused to submit Mueller's two proposed contract formation questions:

Was Mueller's Quotation of December 17, 1990, as modified by Mueller's letters to Alcon of January 22 and 23, 1991, and an oral price adjustment an offer to sell stainless steel tanks to Alcon?

Did Alcon agree to and accept Mueller's offer consisting of its Quotation of December 17, 1990, as modified by Muel-

ler's letters to Alcon of January 22 and 23, 1991 and an oral price adjustment?

■ "A trial court is required to submit only ultimate or controlling factual issues which are essential to a right of action or defense." *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 715 (Tex.App.—Dallas 1989, writ denied). "A controlling issue is one which requires a factual determination to render judgment in the case." *Collins v. Beste*, 840 S.W.2d 788, 790 (Tex.App.—Fort Worth 1992, writ denied). We hold that the trial court submitted a jury question on the controlling issue in the case because the entire case turned on whether Mueller accepted Alcon's purchase order.

■ Mueller's proposed contract formation questions were inferential rebuttal questions or issues. The basic characteristic of an inferential rebuttal issue is that it presents a contrary or inconsistent theory from the claim relied upon for recovery. *See Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex.1978). They are sometimes characterized as "denial issues or argumentative denials." *Id.* The submission of inferential rebuttal issues has been expressly prohibited by the Texas Rules of Civil Procedure since 1973. *See* TEX.R. CIV. P. 277; *Kemp v. Rankin*, 530 S.W.2d 324, 325 (Tex.Civ.App.—Amarillo 1975, no writ). Instead, trial courts are now required to submit broad-form questions, which by their nature "include a combination of elements or issues." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 924 (Tex. 1981).

■ Mueller argues on appeal that the trial court had no discretion but to submit the requested questions because they were raised as affirmative defenses in Mueller's answer and supported by the evidence. However, Mueller's vague references to "express limited warranties" in its answer do not raise true affirmative defenses, but only constitute a rebuttal of Alcon's ground of recovery on which Alcon had the burden of proof. *See Russell v. City of*

*Bryan*, 919 S.W.2d 698, 704 (Tex.App.— Houston [14th Dist.] 1996, writ denied) ("An affirmative defense permits a party to introduce evidence to establish an independent reason why its opponent should not prevail, not to rebut the factual proposition to its opponent's pleadings."); *Kemp*, 530 S.W.2d at 325. And Mueller expressly represented to the court during trial that its antecedent oral contract theory was not an affirmative defense, but was "simply a denial that what [Alcon] alleges were the terms of the contract is correct."

Alcon's burden at trial was to establish that Mueller accepted the Alcon purchase order, and Mueller's defense was to convince the jury that this did not happen because Alcon had already agreed to another contract. The trial court's refusal to submit Mueller's proposed contract formation questions did not deprive Mueller of this defense. *See Retama Manor Nursing Ctrs., Inc. v. Cole*, 582 S.W.2d 196, 202 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Kemp*, 530 S.W.2d at 325. Even the pre–1973 case relied on by Mueller holds that multiple contract formation questions need not be submitted because they are nothing more than various phases or different shades of the same question. *See Perry v. Little*, 419 S.W.2d 198, 199 (Tex.1967). We hold that the trial court did not err in refusing to submit Mueller's proposed contract formation questions and overrule point one.

■ Mueller's second point asserts that the trial court erred in submitting Alcon's contract formation question to the jury asking if Mueller accepted the terms of the Alcon purchase order because Mueller's quotation rejected any inconsistent terms not expressly agreed to. Instead, Mueller argues that this is a "battle of the forms" case and that the trial court was required to construe the parties' contract from the quotations, letters, and purchase order. We disagree.

All four Mueller quotations reject any additional terms:

This quotation is conditioned upon Purchaser's acceptance of the terms and conditions herein contained. Seller hereby expressly rejects any and all terms in any purchase order or other document of Purchaser which are in addition to, different from, or inconsistent with the terms and conditions in the Quotation.

The quotations also impose a time deadline for acceptance:

This Quotation is an offer to sell. Seller may withdraw the offer at any time prior to receiving Purchaser's acceptance, and the offer shall expire automatically if not accepted within thirty (30) days from the date of this Quotation.

Mueller asserts that its December 17, 1990 quotation comprises part of the contract between the parties. According to its language, the quotation would have expired before the late January 1991 meeting when Mueller claims the oral contract was entered into. However, Mueller argues that the subsequent negotiations showed that the terms of the quotation, after being modified, were still subject to Alcon's acceptance. *See Axelson, Inc. v. McEvoy–Willis, a Div. of Smith Int'l (North Sea), Ltd.,* 7 F.3d 1230, 1230 (5th Cir.1993) (applying Texas law).

After the late January meeting, Mueller sent two more quotations in February, each also stating that they were offers to sell that would expire automatically in thirty days if not accepted. Those February quotations contained different sales terms from the December 17th quotation. Thus the parties were still negotiating the potential sale a month after the supposed oral contract and Mueller was still sending offers to sell ostensibly because Alcon had not accepted the terms of the December 17th quotation.

Under the circumstances of this case, we hold that there was no acceptance of the December 17, 1990 quotation and that the quotation expired by its own terms. *See Town of Lindsay v. Cooke County Elec.*

*Coop. Ass'n,* 502 S.W.2d 117, 118 (Tex. 1973) ("Where, as here, an offer prescribes the time and manner of acceptance, its terms in this respect must be complied with to create a contract."), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); *Lacquement v. Handy,* 876 S.W.2d 932, 935 (Tex.App.—Fort Worth 1994, no writ) ("[A] time demand offer is one which, by its very terms, expires at a certain time and can no longer be accepted after the expiration of such time."). Therefore, the trial court did not err in submitting Alcon's contract question. We overrule point two.

■ Mueller's third point argues that the trial court erred in submitting Alcon's contract question to the jury because, as a matter of law, Alcon's breach of contract claim failed to state a cause of action. Mueller asserts that there can be no breach of contract claim because Alcon accepted the tanks and is, thus, limited to breach of warranty claims only.

■ Generally, a breach of contract claim exists "where the seller fails to make delivery" and a breach of warranty claim is "available to a buyer who has finally accepted goods, but discovers that the goods are defective in some manner." *Southwestern Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576 (Tex.1991). The supreme court draws the distinction on whether the goods have been delivered *and finally accepted* or not. *See id.*

Where acceptance has occurred, a cause of action for breach of contract is available if the buyer's acceptance is subsequently revoked. *See* TEX. BUS. & COM.CODE ANN. § 2.608 (Vernon 1994). A "buyer may revoke his acceptance ... if his acceptance was reasonably induced either by the *difficulty of discovery before acceptance* or by the seller's assurances." *Id.* (emphasis added).

Mueller does not dispute the jury findings that there were latent defects in the base metal of the tanks that substantially impaired their value, and it is undisputed

that Alcon notified Mueller of these latent defects within a reasonable time from when Alcon discovered or should have discovered the defects. *See* TEX. BUS. & COM. CODE ANN. § 2.608(a) (Vernon 1994); *see also Neily v. Aaron,* 724 S.W.2d 908, 913–14 (Tex.App.—Fort Worth 1987, no writ).

Alcon immediately contacted Mueller after it discovered the severe rust and corrosion problems. Mueller then made a trip to Fort Worth to inspect the tanks and acknowledged "[t]here's a rusting problem." However, two months later and after consulting with Alcon about the problem, Mueller expressly disclaimed "any and all liability for corrosion" in the tanks and proclaimed it had "no responsibility to participate in any way in the repair of" the tanks.

Alcon never waived its right to revoke acceptance of the tanks due to the latent defects in them. Under the circumstances of this case, formal revocation was not required because Mueller had declared in writing that it would not participate in any way to cure the problem and it disclaimed all liability. We hold that Alcon was entitled to assert a breach of contract claim just as if it had initially rejected the goods. *See* TEX BUS. & COM.CODE ANN. § 2.608(c) (Vernon 1994) (The essence of a buyer's right to revoke is that "[a] buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."). We overrule point three.

◼ Mueller's fourth point asserts that the trial court erred in submitting a general damage question which relied on multiple theories of recovery because it alleges one of those theories, the breach of contract claim, failed as a matter of law. Mueller argues that the trial court erred because the damages question did not segregate breach of contract damages from breach of warranty damages.

The damages question stated:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Alcon for damages, if any, proximately caused by Mueller's failure to comply with its agreement with Alcon or any warranties you have found Mueller failed to comply with?

First, we observe that the trial court did not submit a damage issue based on breach of contract. Question No. 2 dealt with Mueller's breach of the Alcon purchase order. Questions Nos. 3, 4, 5 and 6 dealt with the possible breach of various warranties. The jury was instructed to answer Question No. 7, the damages question, only if it answered "yes" to "Questions Nos. 3, 4, 5 or 6", the breach of warranty questions.

Second, in this case the damages for breach of contract and breach of warranty are the same. The damages in this case included incidental or consequential damages in the form of repair costs and consulting costs associated with defects in the tanks, costs of replacement tanks, and installation and validation costs incurred in connection with replacing the two 5,000 gallon tanks. The business and commerce code provides that these damages are recoverable for both breach of contract and warranty claims. *See* TEX. BUS. & COM.CODE ANN. §§ 2.711(a)(2), 2.713(b), 2.714(c) and 2.714(c), cmt. 2 (Vernon 1994); *see also Green Tree Acceptance, Inc. v. Pierce,* 768 S.W.2d 416, 419 (Tex.App.—Tyler 1989, no writ); *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 141 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

We have previously held that the breach of contract issue was properly submitted. All damage elements awarded by the jury fall within the scope of damages recoverable for either breach of contract or breach of warranty, and a finding of liability on any of Alcon's claims supports the award of all damages assessed by the jury. *See Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas,* 516 S.W.2d 138, 142 (Tex.1974). As Professor Dorsaneo explains:

[I]f separate liability findings were made and if each liability theory had the same

measure of actual damages, it would not be sensible to presume that the damages awarded were somehow tainted by the inclusion of a flawed theory. If "all roads lead to Rome" and it is clear that at least one of the proper routes was taken, the problem has become entirely theoretical.

William V. Dorsaneo, III, *Broad–Form Submission of Jury Questions and the Standard of Review*, 46 SMU L.REV. 601, 631 n. 183 (1992). We hold that the trial court did not err in submitting a general damages question and overrule point four.

Mueller's fifth point asserts that the trial court erred in submitting a question on the issue of breach of the implied duty of good and workmanlike performance because Mueller provided no repair services and thus could not have breached the duty. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.1987) (extending the implied warranty of good and workmanlike performance to services for the repair or modification of tangible goods or property). Alcon argues that the duty extends to the original fabrication of the tanks and is not limited to services to repair goods. *See Humber v. Morton*, 426 S.W.2d 554, 555 (Tex.1968) (extending the implied warranty of good and workmanlike performance to home construction). The evidence at trial showed that the rust and corrosion problems were caused by Mueller's use of defective stainless steel, and Mueller does not challenge that evidence on appeal.

 We need not address point five because the trial court submitted three other breach of warranty questions: (1) breach of express warranties that (a) the tanks would be free of defects in material and workmanship, (b) the tanks would conform to any labels on the tanks, (c) the tanks would comply with Mueller's advertisements relating to any materials used in the tanks; and (d) the express warranty of merchantability; (2) the implied warranty of merchantability; and (3) the implied warranty of fitness for a particular pur-

pose. When the trial court judgment can be sustained on any theory of law applicable to the case, it is the duty of the appellate court to sustain the judgment. *See Custom Leasing, Inc.*, 516 S.W.2d at 142.

Mueller's sixth point asserts that the trial court "confused and misled the jury" in its submission of all of the breach of warranty claims because the questions and instructions referred to the Alcon purchase order. All of its arguments under this point relate in some way to its claim that the trial court erroneously submitted Alcon's contract formation question. However, we have held that the trial court properly submitted Alcon's question concerning breach of the Alcon purchase order. Accordingly, we hold that the trial court did not err in submitting the breach of warranty questions referring to the purchase order and we overrule point six.

### Conclusion

Because we find no jury charge error and have overruled all of Mueller's points, we affirm the trial court's judgment.